Good morning, Your Honors. May it please the Court, my name is Georgia McMillan. I represent the Defendant Appellant. I'd like to reserve two minutes for rebuttal. Your Honors, we have a preliminary issue with the panel in the courtroom. This appeal rests in part on confidential sealed records that have been submitted to the Court and the parties. The issues involved in the appeal would involve discussion concerning these confidential records. The Deputy Clerk has pointed out that these proceedings are recorded and they're disseminated over the website, and so we're not quite sure how to handle this. We think that the panel would probably want to ask us questions, myself and the Assistant U.S. Attorney concerning these facts. Thank you for calling that to our attention. So we'll turn to NOM v. Ashcroft. You may proceed whenever you're ready. Thank you, Counsel. Good morning. May it please the Court, my name is Maile Hirota, and I represent the Petitioner, Ms. Nam. Your Honors, the Petitioner's case is substantially similar to SALTA v. Ashcroft, and we urge the Court to grant Petitioner the same relief that this Court granted Ms. SALTA in its 2002 decision by remanding the case to the Board with instructions to allow the IJ, with instructions to direct the IJ to allow Ms. Nam to provide evidence to reopen her case. The important thing in this case is that Ms. Nam does have relief. She's not a criminal. She has not, there's no allegations of fraud in her case. She's married to a United States citizen, and she has a pending immigrant visa petition, which was filed by her husband. We have asked the District Counsel in Honolulu to join in a motion to reopen, but we have not heard back from him. I know also that some of these cases have, the government has agreed to mediation to have them essentially removed from the calendar, and I'll ask opposing counsel about that. Thank you, Your Honor. In SALTA, the Court did announce a new standard for motions to reopen in absentia with regard to notices of hearing which were mailed without certified mail. However, the Court did not retroactively apply that standard to the petitioner in that it did allow her an opportunity to comply with the Court's decision by remanding the case back to the Board with instructions to the IJ. And we find that the petitioner's case is substantially similar to SALTA. SALTA had not submitted an affidavit in the first instance with her motion to reopen, just as Ms. Nam had not submitted that affidavit initially. The Board, in our case, incorrectly placed the burden on Ms. Nam to disprove that she had received notice, and SALTA held that there is no strong presumption because the notice was not sent via certified mail. The Board, in our case, also relied on matter of GYR, which is an old line of cases which also was discussed in the SALTA decision. The government cites SALTA for the wrong proposition, which is that simply that an affidavit is required. It doesn't go into the details, which is that although an affidavit is required from the date of the Court's decision, Ms. Nam's motion to reopen, motion to reconsider, and indeed her entire appeal before the Board was completed before the SALTA decision was filed. In addition, the government in this case did not follow its own policy memorandum, which was that it wanted to encourage filings or at least discourage filings from people who would have eventually benefited from relief under Section 245I of the Act. Initially, Ms. Nam was married to a lawful permanent resident. She was not an overstay at the time. She entered lawfully, and she got an extension of her visitor status, and then she got married. Her husband filed a visa petition for her, and her priority date wasn't current, so she had to wait probably a number of years for her priority date to be current, and she would have to adjust her status under Section 245I of the Immigration Act. The Immigration Service issued a policy memorandum stating that it would, as a matter of policy, choose to exercise its prosecutorial discretion and not place people in Ms. Nam's position in removal proceedings. In this case, it did exactly that. It turned around and put her into removal proceedings. Petitioner's counsel had submitted a letter to the Immigration Service, the notice to appear in removal proceedings, that had been improvidently issued, and counsel did not receive any response. In the meantime, there was a delay between the time of the issuance of the notice to appear and the filing of it with the court. So we also have a problem here where the court will not accept counsel's notice of entry of appearance as attorney until it receives the NTA. So where counsel attempts, we're aware of the NTA, we attempted to file our notice of appearance with the court, the court wouldn't accept it because it hasn't received the notice to appear yet. So I think it's clear in this case that Ms. Nam was not avoiding court or not trying to, she wanted to attend her hearing. So there's no concern here that this was a dilatory tactic by not appearing at her hearing as scheduled. She simply did not receive the notice of hearing. And in fact, as soon as she received the notice of the in absentia order, she immediately filed a motion to reopen because she had a form of relief at that time. The very basic form of relief would have been voluntary departure. At this point, if she's already deported, she'll be barred from returning to the United States for at least five years. And she's married to a U.S. citizen, but she'll need a waiver, which is not easy to get from outside the United States. So actually, I see we have quite a bit of time left, but I'd like to reserve that for a while. You may do that. We'll hear from the Attorney General. Preliminarily, Your Honors, I was supposed to present... What is your name? I'm sorry, Robin Blaya for the Attorney General. Can you spell your last name because it's not on our list. G. Ezenboy, L. A. Y. A. Thank you. I was supposed to present the next case as well, but Julia Doig-Wilcox from my office will be doing that. Okay. May it please the Court, my name is Robin Blaya. I represent the Attorney General in this matter. The Board correctly and did not abuse its discretion when it denied Ms. Mellon's motion to reconsider. May I just interrupt and ask, do I take it from your opening sentence that the government is not willing to join in a motion to reopen? At this point, no, Your Honor. Is the government willing to entertain mediation in this case? I don't believe so, Your Honor, but if the Court requires it, then... Okay. No, that's... I don't know whether we will or we won't, but I just wanted to understand your position. I take it then that you don't think SALTA controls this case? No, Your Honor. We think that she got notice of this... That's not the point. You don't think SALTA controls this case? It's not on all fours of this case? Your Honor, I am not... I am not so familiar with SALTA that I can discuss it. I'd be happy to bring it... Well, that makes it very difficult because it appears that SALTA is right on point. And you have not reviewed SALTA? Your Honor, I had a copy of it and somehow it got lost. I'm sorry. What's the controlling case in this case? Well, Your Honor, not knowing what SALTA says, unfortunately, we believe that this case, she had notice of... What evidence do you have that she had notice? She served with the notice to appear on July 20, 2001 at the address that the Court had for her. By regular mail? By regular mail. No, she was personally served with that, I believe, because she signed it. That is signed. On page 83, I believe, is her signed Certificate of Service. That was the address in her sworn statement of that same date that she indicated that's where she was living, that same address. The notice of the hearing was sent to that Amanda Street address, and there was nothing that came back indicating that it hadn't been delivered. She herself in her affidavit that she... Oh, this is... Yeah, the first one on page 83 is the notice to appear, but it doesn't tell her when or where or anything else. It tells her she's going to be given notice. So it's notice of notice to come in the future. Yeah. And then you send a second notice to her, which doesn't come back. In the meantime, she's hired an attorney, indicated that she's taking all of this quite seriously, and then she tells you that she didn't get the second notice. That's correct, Your Honor, but she indicated also in the affidavit that she attached to her motion to reconsider that it had been broken, her mailbox had been broken for some time, and somehow, I mean, she was getting mail there. She got the in absentia order, but she didn't get the notice of hearing. Well, I get mail at my house, but it doesn't mean that everything that's sent arrives. I don't understand how that can prove that she got this. Well, it's presumed that the Postal Service did its job and delivered this piece of mail. There's nothing... After SALTA, we don't have a strong presumption that people get it. You don't send it by certified mail. Well, there's nothing under the statute that requires us to send it by certified mail. But there is under our case law. Well, with all due respect, Your Honor, I mean, courts don't use certified mail all the time. We get stuff from this court as well, and it's not sent certified mail. SALTA does not require that it be sent by certified mail. It simply says that if it is not, there are certain evidentiary consequences to the decision to send it by regular mail, which is that a person has the opportunity to come in and demonstrate that, notwithstanding that it was mailed, it was not received. But there's nothing to indicate your... Well, Your Honor, everything was sent to this address. She at no time has said that she's changed her address or anything. The notice of hearing indicates that this... So you would have us presume that the Postal Service is perfect and that no one ever steals mail. Well, we would have you presume that they did do their job and deliver the mail. Are we to presume that, for example, it was correctly addressed? Well, Your Honor, according to the hearing notice, it was correctly addressed. Then you also want us to write an opinion that overrules our prior panel opinion of SALTA. Well, Your Honor, again, unfortunately, I did not... I understand that, but if we represent to you that SALTA is not in conformance with your theory, then we'd have to write opinion of this panel overruling a prior panel opinion, which we can't do. That's correct, Your Honor. That's my understanding. Counsel, doesn't it strike you as just a little odd that somebody would go to the trouble of signing the prior notice, acknowledging that they would be receiving notice at some time in the future, would then file a notice of representation by attorney, which is trouble on her part and expense, and then not bother to show up? I mean, that doesn't sort of accord with ordinary human nature, does it? Well, Your Honor, I've been doing this six and a half years, and I'm not surprised by a lot of things anymore, quite frankly. I've seen a lot of different scenarios that I wouldn't necessarily have if I hadn't seen them. If Ms. Naum had shown up at this hearing, what would have been the likely result? I quite honestly don't know, because she didn't have a visa petition available to her at that time, and in order for her to adjust her status, she would have had to have that. But she does now. Well, if she does now, that's not before the court. At the time that this was decided, she did not have a visa petition. Do you dispute that she is lawfully married, that she has not committed a crime, and that she has not done anything fraudulent? Based on the knowledge that I have now, no, I don't. But that's not to indicate that the DHS office here doesn't have information on that, because they never really got to that in this decision. They also take issue with the service memo. But as I pointed out, in order for her to adjust her status, she would have had to have an immigrant visa available to her, and she was not the beneficiary of a visa at that time. Moreover, she was not put in proceedings because she had filed for this visa application. She was put in proceedings because it appears she was picked up at a nightclub under an INS raid or some sort of raid. So she wasn't placed in proceedings solely because she had applied for this relief. And because there is no indication that there was an approved visa petition, there's no indication that she would have been granted this relief, even if she would have appeared at her hearing. So we would ask that the court affirm the board's decision and deny the petition for review. Thank you, counsel. Ms. Sirota, do you have any rebuttal? Thank you. The likely result of the hearing, had she gone to the hearing, would have been either that she would have been granted voluntary departure, which is an important form of relief to her, in that she would have then had no bar against her return, as she would now if she's ordered removed. Or the immigration judge could have granted termination of the proceedings based on the NTA being improvidently issued. Or the immigration service may have agreed to administratively close the proceedings. And then when her priority date became current, then she could apply for adjustment of status. So she had several forms of relief. Obviously, Salta is clearly on point in this case. Although she did have notice that she was placed in proceedings, she didn't have notice of when to go to the court. And absent camping out outside the court, she has to wait to receive that notice of hearing. And her counsel didn't receive the notice either. Again, Salta's already held that there's not a strong presumption of delivery when certified mail is not used. And we're not claiming that certified mail is required. But Salta has already established the standards. They were established after this petitioner filed her motion. And so we're simply asking for the same opportunity that Ms. Salta was given. Thank you. Thank you, counsel. The case for Starkey is submitted. And we will move then to Medina v. Ashcroft.
judges: Brunetti, Graber, Bybee